UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

VEER CHETAL,

Defendant.

Criminal Action No. 24-494 (CKK)

**MEMORANDUM OPINION & ORDER**
(July 14, 2025)

On April 3, 2025, the Court ordered that Defendant Veer Chetal be detained pending sentencing. *See* Mem. Op. & Order, ECF No. 32. Chetal now moves for readmission to the community under conditions of release. Having considered the parties' briefs, the entire record, and the applicable law, the Court **DENIES** Chetal's [32] Renewed Motion in Support of Readmission to Release.

**I. BACKGROUND**

Defendant Veer Chetal was charged by Information with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). *See* Information, ECF No. 2. Those charges related to Chetal's participation in an alleged conspiracy that is the subject of a different criminal matter before this Court, *United States v. Lam, et al.*, 24-cr-417. On November 13, 2024, Chetal pleaded guilty to both charges in the Information and agreed to cooperate with the Government. Plea Agreement, ECF No. 9.[1] That day, the Court ordered Chetal released pending sentencing under conditions of release. Order Setting Conditions of Release, ECF No. 12 ("Release Order").

---

[1] Although the docket in this matter was originally sealed, the Court recently granted the parties' joint motion to unseal the docket following the return of a superseding indictment in *United States v. Lam*, which made the fact of Chetal's cooperation with the Government readily apparent to the defendants in that matter. *See* Order, ECF No. 36.

1

On January 24, 2025, the Government filed an *ex parte* Motion for Revocation of Release and Request that the Court Issue a Bench Warrant. ECF No. 13. That motion informed the Court of evidence that Chetal had violated his conditions of release, violated his cooperation agreement with the Government, and made plans to travel outside the country. *See* Mem. Op. & Order, ECF No. 29, at 2. In response, the Court issued a warrant for Chetal's arrest; ordered that Chetal be temporarily detained under 18 U.S.C. § 3142(d) following his arrest; and ordered that Chetal be transferred to the District of Columbia for a hearing on the Government's motion for revocation of his release. *See* Order, ECF No. 14. Chetal was then arrested in Connecticut and later transferred to this District. *See* Mem. Op. & Order, ECF No. 29, at 2.

On March 5, 2025, Chetal and the Government appeared before the Court. *See* Mem. Op. & Order, ECF No. 29, at 3. The parties requested additional time to prepare for a formal detention hearing on the Government's motion for revocation of release. *See* Joint Status Report, ECF No. 28. With the Government's agreement, and while preserving his right to later contest the revocation of his release, Chetal conceded at the March 5 hearing that the Government had satisfied its burden to revoke his release under 18 U.S.C. § 3148(b). *See* Mem. Op. & Order, ECF No. 29, at 4–5. The Court accordingly revoked Chetal's Release Order, ordered that he be detained, and ordered the parties to appear for another hearing on April 2, 2025. *Id.* at 5–6.

As planned, Chetal then moved for reconsideration of the Court's revocation order, and the Court held a detention hearing on April 2, 2025. *See* Mem. Op. & Order, ECF No. 32, at 3. Chetal and the Government each gave oral presentations in support of their respective positions. And the Court heard testimony from Chetal's parents, who had offered to supervise Chetal in the event of his release. *See id.* Evaluating the parties' presentations under 18 U.S.C. § 3148(b), the Court concluded that the Government had carried its burden of demonstrating that Chetal had violated

2

his conditions of release, that Chetal was a flight risk, and that no condition or combination of conditions of release could ensure that he would not flee or pose a danger to the community. *Id.* at 4–9. The Court noted that Chetal's immigration status and plans for how he would spend his time on release were uncertain, observed that Chetal had a demonstrated history of accessing huge sums of money with ease, and expressed concern that Chetal's parents would effectively supervise him if released. *Id.* at 7–9. The Court accordingly denied Chetal's motion for reconsideration of its earlier order granting the Government's motion for revocation of Chetal's release. *Id.* at 9. But the Court did so without prejudice to Chetal's ability to raise the issue of his detention again. *Id.*

Chetal now moves again for readmission to the community. *See* Def.'s Mot., ECF No. 34. The Government opposed Chetal's motion. *See* Gov't's Opp'n, ECF No. 37. And Chetal replied in support of his motion. *See* Def.'s Reply, ECF No. 38.

## II. LEGAL STANDARD

Chetal's motion—a request for readmission to pre-sentencing release following the revocation of such release—does not fit neatly into any of the statutory provisions that govern district courts' authority to detain or release criminal defendants at various stages of the criminal-adjudication process. Perhaps recognizing this, the parties' briefs do not address what standard of review should apply here. Chetal has already entered a guilty plea and is awaiting sentencing, so the Bail Reform Act—which governs pretrial release—does not apply. *See* 18 U.S.C. § 3142. Nor is Chetal requesting reconsideration of an order detaining him pending sentencing under 18 U.S.C. § 3143(a). In fact, Chetal was ordered released pending sentencing under 18 U.S.C. § 3143(a) prior to the revocation of that release. *See* Mem. Op. & Order, ECF No. 32, at 3.

Because the Court denied Chetal's motion for reconsideration of the revocation of his release pending sentencing without prejudice to his ability to contest his detention again, the Court

will assess his instant motion *de novo* (rather than under a more burdensome standard for reconsideration) under 18 U.S.C. § 3143(a)—the statute governing release pending sentencing.

By default, this Court "shall order" that a defendant like Chetal "awaiting imposition or execution of a sentence" be detained. 18 U.S.C. § 3143(a)(1). But the Court need not do so if it "finds by clear and convincing evidence" that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released" on personal recognizance or on conditions. *Id.* In other words, the Court must "make the same flight risk and dangerousness assessment that the Bail Reform Act requires" for pretrial detention, "only, now, detention is presumed, and it is the defendant's burden to convince" the Court that he should be released. *United States v. Wiggins*, 613 F. Supp. 3d 348, 353–54 (D.D.C. 2020) (KBJ).

### III. ANALYSIS

The Court has determined twice—on a standard of review more favorable to Chetal—that Chetal is a flight risk even while subject to restrictive conditions of release. *See* Mem. Op. & Order, ECF No. 29; Mem. Op. & Order, ECF No. 32. The Court now reaches a similar conclusion again. Chetal has not carried his burden of demonstrating his entitlement to release pending sentencing by clear and convincing evidence. Although Chetal has addressed some of the concerns that animated the Court's decision to revoke Chetal's release, he has not resolved the fundamental issue requiring his detention: The Court cannot trust Chetal not to flee.

Although Chetal has lived in the United States since he was a child, he has few concrete ties to any community. He has no job or work history. He has no spouse or children. And he has only vague plans to enroll in online classes if released. Moreover, Chetal and his parents are not U.S. citizens. Chetal represents that he is presently in the country on an H-4 non-immigrant visa derivative of his father's H-1B visa. But Chetal's father no longer has an H-1B visa, and Chetal's

4

parents are presently authorized to remain in the country under a U visa due to their status as victims of a crime and cooperation with law enforcement in Connecticut. The Court commends Chetal's counsel for his diligent efforts in clarifying the family's immigration status. But it remains the case that the record before the Court shows that Chetal and his family will likely need to leave the United States when this matter and the matter involving Chetal's parents conclude.

Meanwhile, Chetal has a significant incentive to flee before the conclusion of those matters. He faces a sentencing guidelines range of 235–293 months incarceration. *See* Plea Agreement at 4. And given his immigration status, he will likely be deported to India following the completion of that sentence. Chetal is thus faced with the choice between fleeing the country now or serving a substantial prison sentence and then being forced to leave the country anyway.

Moreover, Chetal has already demonstrated an interest in fleeing the country before sentencing. While on release pending sentencing, Chetal "began to explore college options in India and Dubai." Mem. Op. & Order, ECF No. 32, at 6. Indeed, Chetal apparently attempted to enroll in college in India beginning in September 2025, prepared to take an entrance exam for that Indian college, and retained his passport in violation of his conditions of release to facilitate his enrollment. *Id.*

Chetal argues that restrictive conditions of release—including location monitoring, a daily curfew, the surrender of his parents' passports, and the posting of a surety bond—under his parents' supervision can effectively mitigate any risk that he will flee or commit further crimes if released pending sentencing. *See* Def.'s Mot. at 3–5. And the Court agrees with Chetal that the arrest, detention, and close supervision of many of his admitted co-conspirators has muted to some degree the concerns that animated the Court's decision to revoke his release in the first instance.

5

*See id.* at 3. But at bottom, Chetal's arguments require that the Court trust him. And the Court cannot place its trust in Chetal on the record before it.

Chetal has admitted to participating in a series of complex digital frauds involving impersonation, lies, and covert electronic communication. Chetal has admitted that, when the Court placed its trust in him to comply with his conditions of release, he abused that trust, violated his conditions, remained in contact with his co-conspirators, accepted hundreds of thousands of dollars in proceeds he knew to be stolen, and hid this information from the Government. And Chetal has admitted that he repeatedly lied to his parents about the nature of criminal activities, which he perpetrated in their home and under their supervision.

Chetal contends that he has learned his lesson and that the unsealing of this matter has allowed his parents to—for the first time—fully appreciate the extent of his admitted criminal conduct. He argues, in short, that "[t]here can be no further deception by [Chetal] over his parents" and that his parents can effectively supervise him if released. Def.'s Reply at 4. The Court is not convinced. Although the Court does not doubt the sincerity of Chetal's parents' love for their son and willingness to do anything they can to help him, those qualities do not necessarily inspire confidence that Chetal's parents will dutifully ensure that he abides by his conditions of release and reports for his sentencing. Indeed, the Government's cross-examination of Chetal's parents revealed an alarming willingness to turn a blind eye to glaring indications of Chetal's criminal conduct. Prior to the inception of this matter, while unemployed and living at home, Chetal was flying in private jets, renting multi-million-dollar mansions, gifting his parents a Lamborghini, and storing hundreds of thousands of dollars in cash in his parents' home. *See* Mem. Op. & Order, ECF No. 32 at 8–9. Having observed Chetal's parents testify about these matters, the Court does not credit Chetal's theory that his parents have only now realized something was amiss.

Chetal is a non-citizen facing a substantial prison sentence. He is an admitted fraudster with a demonstrated history of accessing and moving huge sums of cryptocurrency and cash online and covertly. When the Court ordered him released pending sentencing, he violated his conditions of release and his cooperation agreement with the Government by, among other things, remaining in contact with his co-conspirators and accepting illicit funds. While on release, he also made plans to leave the country. Although some of his co-conspirators have now been arrested, others remain at large in the United Arab Emirates[2]—a non-extradition country to which Chetal considered relocating. Chetal requests that he be released to live with and under the supervision of his parents, who are also non-citizens and with whom Chetal lived when he committed the bulk of his criminal conduct.

Under these circumstances, the Court cannot conclude by clear and convincing evidence that Chetal "is not likely to flee or pose a danger to the safety of any other person or the community if released" pending sentencing. 18 U.S.C. § 3143(a)(1).

### IV. CONCLUSION & ORDER

Accordingly, the Court hereby **ORDERS** that Chetal's [34] Renewed Motion in Support of Readmission to Release is **DENIED**.

**SO ORDERED.**

Dated: July 14, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[2] The Court refers here to Ethan Yarally and Cody Demirtas, two defendants in 24-cr-417.