UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VEER CHETAL,<br><br>Defendant. | Criminal Action No. 24-494 (CKK) |

**MEMORANDUM OPINION & ORDER**
(November 17, 2025)

On July 14, 2025, the Court ordered that Defendant Veer Chetal continue to be detained pending sentencing. *See* Mem. Op. & Order, ECF No. 32. Chetal now moves for a modification to his existing conditions of pre-sentencing detention or, in the alternative, readmission to the community under conditions of release. Having considered the parties' briefs, the entire record, and the applicable law, the Court **DENIES** Chetal's [41] Motion.

**I. BACKGROUND**

The Court recently detailed the background of this case in its Memorandum Opinion & Order denying Chetal's second request for readmission to the community under conditions of release. *See* Mem. Op. & Order, ECF No. 40 (denying Def.'s Renewed Mot. in Support of Readmission, ECF No. 34). The Court reincorporates much of that background here.

Chetal was charged by Information with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). *See* Information, ECF No. 2. On November 13, 2024, Chetal pleaded guilty to both charges in the Information and agreed to cooperate with the Government. Plea Agreement, ECF No. 9. That day, the Court ordered Chetal released pending sentencing under conditions of release. Order Setting Conditions of Release, ECF No. 12 ("Release Order").

1

On January 24, 2025, the Government filed an *ex parte* motion requesting the revocation of Chetal's Release Order and a bench warrant for Chetal's arrest. ECF No. 13. That motion informed the Court of evidence that Chetal had violated his conditions of release, violated his cooperation agreement with the Government, and made plans to travel outside the country. *See* Mem. Op. & Order, ECF No. 29, at 2. In response, the Court issued a warrant for Chetal's arrest; ordered that Chetal be temporarily detained under 18 U.S.C. § 3142(d) following his arrest; and ordered that Chetal be transferred to the District of Columbia for a hearing on the Government's motion for revocation of his release. *See* Order, ECF No. 14. Chetal was then arrested in Connecticut and later transferred to this District. *See* Mem. Op. & Order, ECF No. 29, at 2.

Chetal and the Government appeared for a hearing before the Court on March 5, 2025. *See* Mem. Op. & Order, ECF No. 29, at 3. The parties requested additional time to prepare for a formal detention hearing on the Government's motion for revocation of release. *See* Joint Status Report, ECF No. 28. With the Government's agreement, and while preserving his right to later contest the revocation of his release, Chetal conceded at the March 5 hearing that the Government had satisfied its burden to revoke his release under 18 U.S.C. § 3148(b). *See* Mem. Op. & Order, ECF No. 29, at 4–5. The Court accordingly revoked Chetal's Release Order, ordered that he be detained, and ordered the parties to appear for another hearing on April 2, 2025. *Id.* at 5–6.

As planned, Chetal then moved for reconsideration of the Court's revocation order, and the Court held a detention hearing on April 2, 2025. *See* Mem. Op. & Order, ECF No. 32, at 3. Chetal and the Government each gave oral presentations in support of their respective positions. The Court also heard testimony from Chetal's parents, who had offered to supervise Chetal in the event of his release. *See id.* Evaluating the parties' presentations under 18 U.S.C. § 3148(b), the Court concluded that the Government had carried its burden of demonstrating that Chetal had violated

his conditions of release, that Chetal was a flight risk, and that no condition or combination of conditions of release could ensure that he would not flee or pose a danger to the community. *Id.* at 4–9. The Court noted that Chetal's immigration status and plans for how he would spend his time on release were uncertain, observed that Chetal had a demonstrated history of accessing huge sums of money with ease, and expressed concern that Chetal's parents would effectively supervise him if released. *Id.* at 7–9. The Court accordingly denied Chetal's motion for reconsideration of its earlier order granting the Government's motion for revocation of Chetal's release. *Id.* at 9. But the Court did so without prejudice to Chetal's ability to raise the issue of his detention again. *Id.*

On May 30, 2025, Chetal filed a Renewed Motion in Support of Readmission to Conditions of Pretrial Release. ECF No. 34; *see also* Def.'s Reply, ECF No. 38. The Government opposed Chetal's motion, arguing that Chetal posed a flight risk. Gov't's Opp'n, ECF No. 37. On July 14, 2025, the Court denied Chetal's motion for readmission into the community, finding that Chetal posed a flight risk. Mem. Op. & Order, ECF No. 40 at 4.

Chetal filed this present motion—his third motion to review his conditions of pretrial detention—on October 27, 2025. Def.'s Mot., ECF No. 41. In his motion, Chetal informs the Court that he has enrolled in the University of Arizona Global Campus program to restart his college studies. *Id.* at 1.[1] To participate in this program, Chetal represents that he needs internet access that is unavailable at his current pretrial detention facility. *Id.* at 2. Accordingly, Chetal requests that he either be transferred to a facility that has the internet access he needs to participate in the University of Arizona Global Campus program or be readmitted to the custody of his parents under conditions of release. *Id.*

---

[1] The Court issues this Order before receiving a Reply from Mr. Chetal because Mr. Chetal represents that his start date for the Global Campus program is November 18, 2025. Def.'s Mot., ECF No. 41 at 1.

3

## II. LEGAL STANDARD

For the reasons set forth in the Court's prior Memorandum Opinion & Order regarding Chetal's request for readmission to release on conditions, the Court will assess Chetal's instant motion *de novo* under 18 U.S.C. § 3143(a)—the statute governing release pending sentencing. *See* Mem. Op. & Order, ECF No. 40 at 3–4.

By default, this Court "shall order" that a defendant like Chetal "awaiting imposition or execution of a sentence" be detained. 18 U.S.C. § 3143(a)(1). But the Court need not do so if it "finds by clear and convincing evidence" that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released" on personal recognizance or on conditions. *Id.* In other words, the Court must "make the same flight risk and dangerousness assessment that the Bail Reform Act requires" for pretrial detention, "only, now, detention is presumed, and it is the defendant's burden to convince" the Court that he should be released. *United States v. Wiggins*, 613 F. Supp. 3d 348, 353–54 (D.D.C. 2020) (KBJ).

## III. ANALYSIS

The Court starts with Chetal's request that he be transferred to a pretrial detention facility that provides the type of internet access that would allow him to participate in the University of Arizona Global Campus program. Def.'s Mot., ECF No. 41 at 2. The Government does not object to such transfer. Gov't's Opp'n, ECF No. 42 at 1. However, Chetal does not identify any facilities that may satisfy this request. In fact, Chetal's counsel represents that he has conducted research and determined that there are no pretrial detention facilities that provide the type of internet access that Chetal needs to participate in the Global Campus program. Def.'s Mot., ECF No. 41 at 2. Accordingly, unless Chetal can identify a facility that provides the requisite internet access at a

later date, his motion appears to depend entirely on his request for readmission into the community subject to conditions.

The Court therefore turns to Chetal's request that he be readmitted to the community subject to conditions. The Court has determined three times—on a standard of review more favorable to Chetal—that Chetal is a flight risk even while subject to restrictive conditions of release. *See* Mem. Op. & Order, ECF No. 29; Mem. Op. & Order, ECF No. 32; Mem. Op. & Order, ECF No. 40. The Court reaches a similar conclusion again here. Chetal has not demonstrated by clear and convincing evidence that he is entitled to release pending sentencing. While Chetal has addressed some of the Court's earlier concerns, he still "has not resolved the fundamental issue requiring his detention: The Court cannot trust Chetal not to flee." Mem. Op. & Order, ECF No. 40 at 4.

The Court denied Chetal's prior motion for readmission into the community in part because Chetal "has few concrete ties to any community" in the United States. Mem. Op. & Order, ECF No. 40 at 4. Between Chetal's present motion and his prior motion which the Court denied, the only difference in Chetal's ties to the community appears to be that his "vague plans to enroll in online classes if released" have materialized into concrete plans to enroll in online classes. *Id.* But Chetal's planned enrollment in online courses provided by Arizona State University does not establish significant ties to a community in the United States, and therefore Chetal's lack of ties is still a concern for the Court. In addition, Chetal's motion does not identify any significant changes in the immigration status of Chetal and his family. Accordingly, it remains the case that "the record before the Court shows that Chetal and his family will likely need to leave the United States when this matter and the matter involving Chetal's parents conclude." *Id.* at 5. Finally, Chetal argues that his maternal grandmother will be coming to the United States to apply for permanent

residency, which means that the Chetal family has "no remaining ties to India." Def.'s Mot., ECF No. 41 at 2. But Chetal does not claim that his maternal grandmother is coming to live with his immediate family, to whom he would be released. Nor is Chetal's risk of flight limited to his risk of flight to India. Accordingly, the changed circumstance of Chetal's maternal grandmother planning a move to the United States, while not insignificant, does not alter Chetal's lack of ties to the United States or his risk of flight.

Meanwhile, Chetal still has significant incentive to flee. He faces a sentencing guidelines range of 235–293 months incarceration. *See* Plea Agreement at 4. Furthermore, given his immigration status, Chetal will likely be deported to India following the completion of that sentence. Chetal is thus faced with the choice between fleeing the country now or serving a substantial prison sentence and then being forced to leave the country anyway. Moreover, Chetal has demonstrated an interest in fleeing the country before sentencing. While on release pending sentencing, Chetal "began to explore college options in India and Dubai." Mem. Op. & Order, ECF No. 32, at 6. Indeed, Chetal apparently attempted to enroll in college in India beginning in September 2025, prepared to take an entrance exam for that Indian college, and retained his passport in violation of his conditions of release to facilitate his enrollment. *Id.* Accordingly, these factors continue to weigh in favor of pretrial detention.

Chetal proposes restrictive conditions of release that he argues will assure his appearance. Def.'s Mot., ECF No. 41 at 3–4. But Chetal's proposed conditions are the same conditions that the Court found insufficient in its prior denial of Chetal's request for readmission to the community subject to conditions. *Compare* Def.'s Mot., ECF No. 41 at 3–4 *with* Def.'s Mot., ECF No. 34 at 4–5. Furthermore, although the arrest, detention, and close supervision of many of Chetal's admitted co-conspirators has muted to some degree the concerns that animated the Court's decision

to revoke his release in the first instance, the fact remains that "the Court cannot place its trust in Chetal on the record before it." Mem. Op. & Order, ECF No. 40 at 5. Furthermore, the Government represents that there are many additional co-conspirators who are still at large or who have not yet been fully identified, including "two of the perpetrators of the $248,000,000 cryptocurrency theft that began this investigation." Gov't's Opp'n, ECF No. 42 at 1.

Ultimately, Chetal has not introduced any evidence to allay the Court's concerns of flight stemming from his recent history of deception. *See* Mem. Op. & Order, ECF No. 40 at 5–7. Under these circumstances, the Court cannot conclude by clear and convincing evidence that Chetal "is not likely to flee or pose a danger to the safety of any other person or the community if released" pending sentencing. 18 U.S.C. § 3143(a)(1).

## IV. CONCLUSION & ORDER

Accordingly, the Court hereby **ORDERS** that Chetal's [41] Motion to Allow Internet Access while Pretrial Detained or for Readmission to Pretrial Release is **DENIED**.

**SO ORDERED.**

**Dated:** November 17, 2025

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

7